BLANCHARD v BOARD OF EXAMINERS IN OPTOMETRY

1. LICENSES—REGULATORY BOARDS—MEMBERSHIP—DISQUALIFICATION.

A member of a profession or occupation is not, as a matter of law, disqualified from serving on an administrative board dealing with the profession or occupation merely by the fact of his membership in the profession or occupation.

2. LICENSES—OPTOMETRISTS—BOARD OF EXAMINERS—MEMBERSHIP—DISQUALIFICATION.

Optometrists who practice the profession under the unit system are not automatically disqualified from sitting on the State Board of Examiners in Optometry even in a case where the board is reviewing the license of an optometrist who practices the profession under a different system allegedly resulting in less income to the profession, because either the representatives of the unit system or another group would, of necessity, have a majority on the board (MCLA 338.51).

3. ADMINISTRATIVE LAW—LICENSES—EVIDENCE—BIAS—JUDICIAL REVIEW.

A letter from a member of the State Board of Examiners in Optometry which is claimed by the plaintiff to show the member's bias may not be introduced for the first time in the circuit court on judicial review of the board's action, because a party may not hold back evidence and then seek to use it as a basis for a new trial.

4. ADMINISTRATIVE LAW—JUDICIAL REVIEW.

Whether an administrative rule of the State Board of Examiners in Optometry is an impermissible extension of the statutory grounds for suspension of an optometrist's license is not reviewable by an appellate court where the validity of the rule was

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur 2d, Licenses and Permits §§ 14, 15.
[2] 51 Am Jur 2d, Licenses and Permits § 51 *et seq.*
[3, 4] 2 Am Jur 2d, Administrative Law § 585 *et seq.*
[5] 51 Am Jur 2d, Licenses and Permits § 58.
[6] 51 Am Jur 2d, Licenses and Permits §§ 53, 83.

not an issue in the proceedings before the board or in circuit court, the suspension of plaintiff's license being based on grounds other than a violation of the rule.

5. LICENSES—OPTOMETRISTS—USE OF EQUIPMENT—VALIDITY OF RULE— GROSS INCOMPETENCY.

Whether a rule of the Board of Examiners in Optometry, requiring the use of a retinoscope and an ophthalmometer can be used to suspend an optometrist's license was not an issue in a case where the board suspended plaintiff's license because his failure to use the instruments constituted gross incompetency, not because the board found that a violation of the rule was gross incompetency.

6. ADMINISTRATIVE LAW—TAKING ADDITIONAL EVIDENCE.

The failure of the State Board of Examiners in Optometry to allow a plaintiff to introduce additional evidence in a proceeding before the board on remand from the circuit court was not error where the circuit court indicated that it was not its intention that additional testimony or argument be allowed on remand.

Appeal from Jackson, Charles J. Falahee, J. Submitted Division 2 February 3, 1972, at Lansing. (Docket No. 11799.) Decided April 28, 1972.

Complaint by James R. Blanchard against the Michigan State Board of Examiners in Optometry for review of the board's order suspending the plaintiff's license to practice optometry. The circuit court affirmed the board's order. Plaintiff appeals. Affirmed.

*Goodman, Eden, Robb, Millender, Goodman & Bedrosian,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James J. Blanchard,* Assistant Attorney General, for defendant.

Before: Danhof, P. J., and T. M. Burns and Van Valkenburg,* JJ.

Danhof, P. J. The Board of Examiners in Optometry suspended the plaintiff's license to practice optometry for a period of six months. The plaintiff then filed a petition for review in the Circuit Court for the County of Jackson. The circuit court held that the board had acted improperly in considering matters outside of the charges brought against the plaintiff. The court remanded the case to the board for a determination of whether the failure to use an ophthalmometer and a retinoscope is "gross incompetence and malpractice" which is a statutory ground for suspension. MCLA 338.254(h); MSA 14.644(h). The board so found and the circuit court affirmed. We affirm the circuit court.

The plaintiff moved to disqualify the entire board on the ground of an alleged economic bias. The members of the board refused to disqualify themselves and the plaintiff now assigns this as error.

The alleged economic bias arises from the fact that all five members of the board practiced optometry under what is called the "unit system". Optometrists who practice in this manner examine their patients and then sell them a pair of glasses. The plaintiff examines his patients and gives them a prescription which they can have filled by an optician. According to the plaintiff his method of operation results in great savings to the consumer and, if this practice spreads, it will result in a loss of income to the optometrists who practice under the unit method.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

We must start from the premise that optometrists must be governed by a board composed of a majority of optometrists. Const 1963, art 5, § 5. In the case of optometrists, all members of the board must be members of the profession. MCLA 338.251; MSA 14.641. As the Wisconsin Supreme Court said in *Kachian v Optometry Examining Board*, 44 Wis 2d 1, 12; 170 NW2d 743, 748–749 (1969):

" * * * If the indirect interest deriving from membership in the profession or occupation being regulated disqualifies an individual from serving on a regulatory board, the result would be dentists could not examine dentists, attorneys could not serve on bar examiner boards, pharmacists could not give pharmacy examinations. Would it be preferable, or even workable, to have the dentists giving bar examinations and optometrists giving pharmacy tests? The gain in presumed purity would be matched by a loss in knowledge and experience in drafting and administering professional and occupational rules and regulations. In any event, the question of public policy involved in the composition of administrative agencies is for the Legislature to debate and decide, short of constitutional requirements. We find no constitutional invalidity to the statute here challenged. It cannot be held as a matter of law that a member of a certain profession or occupation is disqualified by that fact from serving on an administrative board dealing with such profession or occupation."

An additional factor of differing methods of practice is certainly a relevant consideration in determining bias. However, we do not feel that the difference involved in this case is cause for automatic disqualification. If we were to adopt the plaintiff's argument it would mean that optometrists could not be governed by a board composed entirely of optometrists, a violation of MCLA 338.251; MSA 14.641. On such a board one group

or another must of necessity have a majority and the rule advocated by the plaintiff would prevent the effective regulation of the profession. Some of these difficulties might be eliminated by including representatives of the general public on the board. However, this is a matter for legislative consideration.

The plaintiff also contends that a letter sent to him by one of the members of the board shows that this member was in fact biased. This matter was raised for the first time on the appeal to the circuit court. A party may not hold back evidence and then seek to use that evidence as a basis for a new trial.

The Board of Optometry has adopted Rule 338.262 which reads:

"Registered optometrists must have and use the following equipment:
"(1) Standard trial case or phoroptor
"(2) Near vision test cards
"(3) Ophthalmometer
"(4) Illuminated test cabinet or projector
"(5) Retinoscope
"(6) Ophthalmoscope
"(7) Adjustable examination chair."

The plaintiff now contends that this rule is an impermissible extension of the statutory grounds for suspension. The plaintiff is incorrect in asserting that the issue of the validity of the rule is presented in this case. The board did not find that violation of the rule is gross incompetency and malpractice. The board found that the failure to use an ophthalmometer and a retinoscope is gross incompetency and malpractice. This finding has ample support in the record and we are not disposed to set it aside.

The plaintiff argues that the board erred when it failed to grant him an opportunity to present additional testimony or argument after the remand by the circuit court. The circuit court indicated that it was not its intention in remanding the matter to the board that additional testimony or additional oral argument be allowed. The question presented was fully argued and briefed in the first proceeding. Under these circumstances there was no error.

Affirmed.

All concurred.